NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

BRIAN PALADINO,                    :
                                   :    Civil Action No. 12-2021 (AET)
            Plaintiff,             :
                                   :
      v.                           :    **OPINION**
                                   :
K. NEWSOME, et al.,                :
                                   :
            Defendants.            :

RECEIVED

AUG 13 2012

AT 8:30_____M
WILLIAM T. WALSH, CLERK

**APPEARANCES:**

Plaintiff pro se
Brian Paladino
New Jersey State Prison
Trenton, NJ  08625

**THOMPSON**, District Judge

      Plaintiff Brian Paladino, a convicted and sentenced prisoner
confined at New Jersey State Prison in Trenton, New Jersey, seeks
to bring this action in forma pauperis pursuant to 42 U.S.C.
§ 1983, alleging violations of his constitutional rights.  Based
on his affidavit of indigence and the absence of three qualifying
dismissals within 28 U.S.C. §1915(g), the Court will grant
Plaintiff's application to proceed in forma pauperis pursuant to
28 U.S.C. § 1915(a) and order the Clerk of the Court to file the
Complaint.

At this time, the Court must review the Complaint, dated March 26, 2012, and Amended Complaint,[1] dated June 13, 2012, to determine whether this action should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief.

## I.   BACKGROUND

The following factual allegations are taken from Plaintiff's Complaint and Amended Complaint and are accepted as true for purposes of this review.

Plaintiff alleges that in October 2010, when he was on a "break" from placement in a restraint chair for his own protection, he was fed a bologna sandwich and 4-ounce juice cup. He alleges that when he tried to get a drink of water from the sink, Sgt. K. Newsome and "John Doe" officers threw him to the floor and beat him about the head, face, and body.  He alleges that on another occasion, the same Sgt. Newsome and other "John Doe" officers choked him, kicked him in the testicles, and put his head underwater to deprive him of air.  He alleges that on this second occasion, he heard the officers state that they were acting at the command of Sgt. M. Perkins, Sgt. Antoinello, Lt. Crothers, and Lt. D. Gerdes.  Plaintiff alleges that he suffered

_____

[1] The Amended Complaint incorporates by reference all factual averments made in the original Complaint.

2

excruciating pain and injuries requiring twenty staples in his head.

Plaintiff alleges that he has been confined in administrative segregation since November 2010. He alleges that he has had no outdoor exercise since that time, which has caused him migraine headaches, muscle cramps, and lazy bones. Plaintiff alleges that prisoners in administrative segregation are entitled to outdoor recreation in a small caged yard in the company of correctional officers, but that he has not been permitted such outdoor recreation.

Plaintiff also alleges that his conditions of confinement include: 24-hour lockdown, a 10-minute shower three times a week, no contact visitation, no opportunity to earn good time credits,[2] the inability to attend religious services, inability to participate in educational programs, deprivation of cleaning supplies, and deprivation of other privileges ordinarily afforded the general prison population. Plaintiff alleges that from May 20, 2011 to February 6, 2012, Officers White, Pinkston, and

---

[2] Any action for declaratory or injunctive relief arising out of Plaintiff's ineligibility to earn good time credits is effectively a challenge to the length of his confinement, and must be brought in a petition for writ of habeas corpus, pursuant to 28 U.S.C. § 2254 following exhaustion of state remedies. Preiser v. Rodriguez, 411 U.S. 475 (1973). Any action for damages arising out of such ineligibility is premature until such time as the policy has been otherwise invalidated by a state decision or habeas action. Heck v. Humphrey, 512 U.S. 477 (1994). Accordingly, this claim will be dismissed without prejudice.

Impagliazzo regularly deprived Plaintiff of his meals.  He also alleges that Officers White and Pinkston regularly refused to dispense hygiene supplies, including toilet paper and soap.

Plaintiff alleges that on February 6, 2012, he was transferred and that, since that date, Officers Ilardi, Maura, and Dominguez have refused to provide him cleaning supplies. Plaintiff alleges that he needs cleaning supplies because his cell is dirty and moldy.

Plaintiff alleges that when he has complained about the conditions of his confinement, including the deprivation of his meals, the officers to whom he complained have told him that they are acting on the instructions of Administrator Charles Warren, Assistant Superintendent K. Nellsen, and Commissioner Gary M. Lanigan.

Plaintiff alleges that his appeals of his conviction (for murder) became final in May of 2011.  See State v. Paladino, 2010 WL 5109940 (N.J. Super. App. Div. Dec. 16, 2010) (affirming denial of petition for post-conviction relief), certif. denied, 206 N.J. 65 (May 12, 2011).  Plaintiff alleges that, since May of 2011, Supervisor Shirley Stephens and "John Doe" defendants have not honored his requests for paralegal assistance or monthly legal supplies.  Plaintiff alleges that he, therefore, had to rely upon another inmate for assistance in preparing this Complaint.  Plaintiff also alleges that in November of 2011, Sgt.

4

Perkins instructed officers Pinkston and White to conduct a cell search and confiscate Petitioner's legal documents regarding his conviction and criminal appeals.[3]

Plaintiff alleges that on November 29, 2011, Officer Pinkston also packed up Plaintiff's personal property.[4] Plaintiff alleges that he filed a remedy form, but has not received a response.

Plaintiff alleges that on January 3, 2012, Sgt. Perkins confiscated Plaintiff's prescription eyeglasses and dentures. Plaintiff alleges that he is suffering blurry vision and headaches without his glasses. He alleges that he is experiencing pain and difficulty in eating without his dentures.

Plaintiff alleges that on January 3, 2012, Sgt Anderson and Officer Jason Holder kicked and punched him in the head, causing a gash above the eye. Plaintiff alleges that Special Investigation Division investigator came to talk with him and take pictures of his wounds. Plaintiff alleges that the

---

[3] Plaintiff also details the nature of his challenges to his conviction. The Court notes that Petitioner has filed in this Court a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. See Paladino v. State of New Jersey, Civil No. 12-1211 (D.N.J.). Accordingly, the Court does not construe the allegations in this civil Complaint as a direct challenge to the conviction.

[4] The confiscated personal property allegedly includes sweatshirts, sweatpants, socks, boxers, tee-shirts, headphones, a towel, shower shoes, a baseball hat, a bowl with lid, a television cable, a knit hat, a soap dish, and a washcloth.

investigator promised not to say anything about Plaintiff's allegations against correctional officers.  Plaintiff alleges that on February 5, 2012, "John Doe" officers maced him with pepper spray and twisted his toe until it fractured.

Plaintiff seeks declaratory and injunctive relief as well as compensatory and punitive damages.

## II.   STANDARDS FOR A SUA SPONTE DISMISSAL

This Court must dismiss, at the earliest practicable time, certain in forma pauperis and prisoner actions that are frivolous, malicious, fail to state a claim, or seek monetary relief from a defendant who is immune from such relief.  See 28 U.S.C. § 1915(e)(2) (in forma pauperis actions); 28 U.S.C. § 1915A (actions in which prisoner seeks redress from a governmental defendant); 42 U.S.C. § 1997e (prisoner actions brought with respect to prison conditions).

In determining the sufficiency of a pro se complaint, the Court must be mindful to construe it liberally in favor of the plaintiff.  Haines v. Kerner, 404 U.S. 519, 520-21 (1972); United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992).  The Court must "accept as true all of the allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff."  Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997).

6

A complaint is frivolous if it "lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325 (1989) (interpreting the predecessor of § 1915(e)(2), the former § 1915(d)).  The standard for evaluating whether a complaint is "frivolous" is an objective one.  Deutsch v. United States, 67 F.3d 1080, 1086-87 (3d Cir. 1995).

In addition, any complaint must comply with the pleading requirements of the Federal Rules of Civil Procedure.

Rule 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  A complaint must plead facts sufficient at least to "suggest" a basis for liability.  Spruill v. Gillis, 372 F.3d 218, 236 n.12 (3d Cir. 2004).  "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" Erickson v. Pardus, 551 U.S. 89, 93 (2007) (citations omitted).

> While a complaint ... does not need detailed factual
> allegations, a plaintiff's obligation to provide the
> "grounds" of his "entitle[ment] to relief" requires
> more than labels and conclusions, and a formulaic
> recitation of the elements of a cause of action will
> not do, see Papasan v. Allain, 478 U.S. 265, 286, 106
> S.Ct. 2932, 92 L.Ed.2d 209 (1986) (on a motion to
> dismiss, courts "are not bound to accept as true a
> legal conclusion couched as a factual allegation").
> Factual allegations must be enough to raise a right to
> relief above the speculative level ... .

Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citations omitted).

The Court of Appeals for the Third Circuit has held, in the context of a § 1983 civil rights action, that the Twombly pleading standard applies outside the § 1 antitrust context in which it was decided.  See Phillips v. County of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) ("we decline at this point to read Twombly so narrowly as to limit its holding on plausibility to the antitrust context").

> Context matters in notice pleading.  Fair notice under Rule 8(a)(2) depends on the type of case -- some complaints will require at least some factual allegations to make out a "showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the ... claim is and the grounds upon which it rests."  Indeed, taking Twombly and the Court's contemporaneous opinion in Erickson v. Pardus, 127 S.Ct. 2197 (2007), together, we understand the Court to instruct that a situation may arise where, at some point, the factual detail in a complaint is so undeveloped that it does not provide a defendant the type of notice of claim which is contemplated by Rule 8.  Put another way, in light of Twombly, Rule 8(a)(2) requires a "showing" rather than a blanket assertion of an entitlement to relief.  We caution that without some factual allegation in the complaint, a claimant cannot satisfy the requirement that he or she provide not only "fair notice," but also the "grounds" on which the claim rests.

Phillips, 515 F.3d at 232 (citations omitted).

More recently, the Supreme Court has emphasized that, when assessing the sufficiency of any civil complaint, a court must distinguish factual contentions -- which allege behavior on the part of the defendant that, if true, would satisfy one or more elements of the claim asserted -- and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory

statements." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009).
Although the Court must assume the veracity of the facts asserted
in the complaint, it is "'not bound to accept as true a legal
conclusion couched as a factual allegation.'" <u>Id.</u> (citation
omitted).   Thus, "a court considering a motion to dismiss can
choose to begin by identifying pleadings that, because they are
no more than conclusions, are not entitled to the assumption of
truth." <u>Id.</u> at 679.

> Therefore, after <u>Iqbal</u>, when presented with a
> motion to dismiss for failure to state a claim,
> district courts should conduct a two-part analysis.
> First, the factual and legal elements of a claim should
> be separated.   The District Court must accept all of
> the complaint's well-pleaded facts as true, but may
> disregard any legal conclusions.   Second, a District
> Court must then determine whether the facts alleged in
> the complaint are sufficient to show that the plaintiff
> has a "plausible claim for relief."   In other words, a
> complaint must do more than allege the plaintiff's
> entitlement to relief.   A complaint has to "show" such
> an entitlement with its facts.   <u>See</u> <u>Phillips</u>, 515 F.3d
> at 234-35.   As the Supreme Court instructed in <u>Iqbal</u>,
> "[w]here the well-pleaded facts do not permit the court
> to infer more than the mere possibility of misconduct,
> the complaint has alleged-but it has not
> 'show[n]'-'that the pleader is entitled to relief.'"
> This "plausibility" determination will be "a
> context-specific task that requires the reviewing court
> to draw on its judicial experience and common sense."

<u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203, 210-11 (3d Cir. 2009)
(citations omitted).

Rule 18(a) controls the joinder of claims.   In general, "[a]
party asserting a claim ... may join as independent or

alternative claims, as many claims as it has against an opposing

party."

Rule 20(a)(2) controls the permissive joinder of defendants

in pro se prisoner actions as well as other civil actions.

> Persons ... may be joined in one action as defendants
> if:
>     (A) any right to relief is asserted against them
> jointly, severally, or in the alternative with respect
> to or arising out of the same transaction, occurrence,
> or series of transactions or occurrences; and
>     (B) any question of law or fact common to all
> defendants will arise in the action.

(emphasis added).  See, e.g., Pruden v. SCI Camp Hill, 252

Fed.Appx. 436 (3d Cir. 2007); George v. Smith, 507 F.3d 605 (7th

Cir. 2007).

In actions involving multiple claims and multiple

defendants, Rule 20 operates independently of Rule 18.

> Despite the broad language of rule 18(a),
> plaintiff may join multiple defendants in a single
> action only if plaintiff asserts at least one claim to
> relief against each of them that arises out of the same
> transaction or occurrence and presents questions of law
> or fact common to all.  If the requirements for joinder
> of parties have been satisfied, however, Rule 18 may be
> invoked independently to permit plaintiff to join as
> many other claims as plaintiff has against the multiple
> defendants or any combination of them, even though the
> additional claims do not involve common questions of
> law or fact and arise from unrelated transactions.

7 Charles Alan Wright, Arthur R. Miller, and Mary Kay Kane,

Federal Practice and Procedure, § 1655 (3d ed. 2009).

The requirements prescribed by Rule 20(a) are to be

liberally construed in the interest of convenience and judicial

10

economy.  Swan v. Ray, 293 F.3d 1252, 1253 (11th Cir. 2002).

However, the policy of liberal application of Rule 20 is not a

license to join unrelated claims and defendants in one lawsuit.

See, e.g., Pruden v. SCI Camp Hill, 252 Fed.Appx. 436 (3d Cir.

2007); George v. Smith, 507 F.3d 605 (7th Cir. 2007); Coughlin v.

Rogers, 130 F.3d 1348 (9th Cir. 1997).

Pursuant to Rule 21, misjoinder of parties is not a ground

for dismissing an action.  Instead, a court faced with a

complaint improperly joining parties "may at any time, on just

terms, add or drop a party.  The court may also sever any claims

against a party."

Where a complaint can be remedied by an amendment, a

district court may not dismiss the complaint with prejudice, but

must permit the amendment.  Denton v. Hernandez, 504 U.S. 25, 34

(1992); Grayson v. Mayview State Hospital, 293 F.3d 103, 108 (3d

Cir. 2002) (dismissal pursuant to 28 U.S.C. § 1915(e)(2)); Shane

v. Fauver, 213 F.3d 113, 116-17 (3d Cir. 2000) (dismissal

pursuant to 42 U.S.C. § 1997e(c)(1)); Urrutia v. Harrisburg

County Police Dept., 91 F.3d 451, 453 (3d Cir. 1996).

### III.  SECTION 1983 ACTIONS

A plaintiff may have a cause of action under 42 U.S.C.

§ 1983 for certain violations of his constitutional rights.

Section 1983 provides in relevant part:

> Every person who, under color of any statute,
> ordinance, regulation, custom, or usage, of any State

11

> or Territory ... subjects, or causes to be subjected,
> any citizen of the United States or other person within
> the jurisdiction thereof to the deprivation of any
> rights, privileges, or immunities secured by the
> Constitution and laws, shall be liable to the party
> injured in an action at law, suit in equity, or other
> proper proceeding for redress ... .

Thus, to state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States and, second, that the alleged deprivation was committed or caused by a person acting under color of state law. West v. Atkins, 487 U.S. 42, 48 (1988); Piecknick v. Pennsylvania, 36 F.3d 1250, 1255-56 (3d Cir. 1994).

Local government units and supervisors are not liable under § 1983 solely on a theory of respondeat superior. See City of Oklahoma City v. Tuttle, 471 U.S. 808, 824 n.8 (1985); Monell v. New York City Department of Social Services, 436 U.S. 658, 690-91, 694 (1978) (municipal liability attaches only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury" complained of); Natale v. Camden County Correctional Facility, 318 F.3d 575, 583-84 (3d Cir. 2003). "A defendant in a civil rights action must have personal involvement in the alleged wrongs, liability cannot be predicated solely on the operation of respondeat superior. Personal involvement can be shown through allegations of personal

12

direction or of actual knowledge and acquiescence." Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988) (citations omitted). Accord Robinson v. City of Pittsburgh, 120 F.3d 1286, 1293-96 (3d Cir. 1997); Baker v. Monroe Twp., 50 F.3d 1186, 1190-91 (3d Cir. 1995).

IV.   ANALYSIS

A.   Eighth Amendment Claims

The Eighth Amendment to the United States Constitution, applicable to the individual states through the Fourteenth Amendment, prohibits the states from inflicting "cruel and unusual punishments" on those convicted of crimes. Rhodes v. Chapman, 452 U.S. 337, 344-46 (1981).

An Eighth Amendment claim includes both an objective component, whether the deprivation of a basic human need is sufficiently serious, and a subjective component, whether the officials acted with a sufficiently culpable state of mind. Wilson v. Seiter, 501 U.S. 294, 298 (1991). The objective component is contextual and responsive to "'contemporary standards of decency.'" Hudson v. McMillian, 503 U.S. 1, 8 (1992). The subjective component follows from the principle that "'only the unnecessary and wanton infliction of pain implicates the Eighth Amendment.'" See Farmer v. Brennan, 511 U.S. 825, 834 (1994) (quoting Wilson, 501 U.S. at 297 (internal quotation marks, emphasis, and citations omitted)); Rhodes v. Chapman, 452

13

U.S. 337, 345 (1981).  What is necessary to establish an
unnecessary and wanton infliction of pain varies also according
to the nature of the alleged constitutional violation.  <u>Hudson v.</u>
<u>McMillian</u>, 503 U.S. at 5.

    1.   <u>Excessive Force</u>

    Plaintiff alleges that on two occasions Sgt. Newsome and
other "John Doe" correctional officers beat him, causing him
severe pain and injuries including a head wound requiring twenty
stitches.  Plaintiff alleges that he heard the officers state
that they were acting at the direction of Sgt. M. Perkins, Sgt.
Antoinello, Lt. Crothers, and Lt. D. Gerdes.

    Where the claim is one of excessive use of force, the core
inquiry as to the subjective component is that set out in <u>Whitley</u>
<u>v. Albers</u>, 475 U.S. 312, 320-21 (1986)(citation omitted):
"'whether force was applied in a good faith effort to maintain or
restore discipline or maliciously and sadistically for the very
purpose of causing harm.'"  <u>Quoted in</u> <u>Hudson</u>, 503 U.S. at 6.
"When prison officials maliciously and sadistically use force to
cause harm, contemporary standards of decency always are
violated."  <u>Id.</u> at 9.  In such cases, a prisoner may prevail on
an Eighth Amendment claim even in the absence of a serious
injury, the objective component, so long as there is some pain or
injury and something more than <u>de minimis</u> force is used.  <u>Id.</u> at
9-10 (finding that blows which caused bruises, swelling, loosened

teeth, and a cracked dental plate were not <u>de minimis</u> for Eighth

Amendment purposes).

To determine whether force was used in "good faith" or

"maliciously and sadistically," courts have identified several

factors, including:

> (1) "the need of the application of force"; (2) "the
> relationship between the need and the amount of force
> that was used"; (3) "the extent of injury inflicted";
> (4) "the extent of the threat to the safety of staff
> and inmates, as reasonably perceived by responsible
> officials on the basis of the facts known to them"; and
> (5) "any efforts made to temper the severity of a
> forceful response."

<u>Brooks v. Kyler</u>, 204 F.3d 102, 106 (3d Cir. 2000) (quoting

<u>Whitley v. Albers</u>, 475 U.S. at 321).   Thus, not all use of force

is "excessive," the level of a constitutional violation.

Here, the allegations are sufficient to permit this claim to

proceed as against the "John Doe" Defendants and Defendants

Newsome, Perkins, Antoinello, Crothers, and Gerdes.

Plaintiff also alleges that on January 3, 2012, Sgt.

Anderson and Officer Jason Holder kicked and punched him in the

head, causing a gash above his eye.   These allegations, also, are

sufficient to state a claim.

Finally, Plaintiff alleges that on February 5, 2012, "John

Doe" officers maced him with pepper spray and twisted his toe

15

until it fractured.[5]  These allegations, also, are sufficient to
state an Eighth Amendment excessive-force claim.

    2.   Conditions of Confinement

    It is well settled that "the treatment a prisoner receives
in prison and the conditions under which he is confined are
subject to scrutiny under the Eighth Amendment."  Helling v.
McKinney, 509 U.S. 25, 31 (1993).

    As noted above, to state a claim under the Eighth Amendment,
an inmate must allege both an objective and a subjective
component.  Wilson v. Seiter, 501 U.S. 294, 298 (1991).  The
objective component mandates that "only those deprivations
denying 'the minimal civilized measure of life's necessities' ...
are sufficiently grave to form the basis of an Eighth Amendment
violation."  Helling v. McKinney, 509 U.S. at 32 (quoting Rhodes,
452 U.S. at 346).  This component requires that the deprivation
sustained by a prisoner be sufficiently serious, for only

---

   [5] Plaintiff alleges that these events took place shortly
after he met with an investigator about the January 3, 2012,
incident.  To the extent Plaintiff intends to assert a claim for
retaliation, the mere temporal connection between these two
events is not sufficient to raise a claim of retaliation above
the speculative level.  Cf. Gans v. Rozum, No. 06-62J, 2007 WL
257127, *6 (W.D. Pa. Aug. 31, 2007) (mere temporal connection
between filing of civil rights complaint and exercise restriction
is "too thin a reed" on which to hang a claim of retaliation claim),
aff'd, 267 Fed.Appx. 178 (3d Cir.) (unpubl.), cert. denied, 129
S.Ct. 84 (2008); Lopez v. Beard, No. 08-3699, 2009 WL 1705674 (3d
Cir. June 18, 2009) (allegation that denial of visitation on two
occasions was in retaliation for filing grievances is frivolous).

16

"extreme deprivations" are sufficient to make out an Eighth Amendment claim. <u>Hudson v. McMillian</u>, 503 U.S. 1, 9 (1992).

The subjective component requires that the state actor have acted with "deliberate indifference," a state of mind equivalent to a reckless disregard of a known risk of harm. See <u>Farmer v. Brennan</u>, 511 U.S. 825, 835 (1994); <u>Wilson</u>, 501 U.S. at 303.

A plaintiff may satisfy the objective component of a conditions-of-confinement claim if he can show that the conditions alleged, either alone or in combination, deprive him of "the minimal civilized measure of life's necessities," such as adequate food, clothing, shelter, sanitation, medical care, and personal safety. <u>Rhodes</u>, 452 U.S. at 347-48; <u>Young v. Quinlan</u>, 960 F.2d 351, 364 (3d Cir. 1992). However, while the Eighth Amendment directs that convicted prisoners not be subjected to cruel and unusual punishment, "the Constitution does not mandate comfortable prisons." <u>Rhodes</u>, 452 U.S. at 349. To the extent that certain conditions are only "restrictive" or "harsh," they are merely part of the penalty that criminal offenders pay for their offenses against society. <u>Id.</u> at 347. An inmate may fulfill the subjective element of such a claim by demonstrating that prison officials knew of such substandard conditions and "acted or failed to act with deliberate indifference to a substantial risk of harm to inmate health or safety." <u>Ingalls v. Florio</u>, 968 F.Supp. 193, 198 (D.N.J. 1997).

Here, the allegations that he has been regularly deprived of meals, recreation, contact visitation, educational programs, hygiene supplies, and cleaning supplies are sufficient to state a claim that, in combination, his conditions of confinement amount to cruel and unusual punishment.

3.  <u>Medical Care Claims</u>

The Eighth Amendment proscription against cruel and unusual punishment requires that prison officials provide inmates with adequate medical care. <u>Estelle v. Gamble</u>, 429 U.S. 97, 103-04 (1976). In order to set forth a cognizable claim for a violation of his right to adequate medical care, an inmate must allege: (1) a serious medical need; and (2) behavior on the part of prison officials that constitutes deliberate indifference to that need. <u>Id.</u> at 106.

To satisfy the first prong of the <u>Estelle</u> inquiry, the inmate must demonstrate that his medical needs are serious. "Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" <u>Hudson v. McMillian</u>, 503 U.S. 1, 9 (1992). Serious medical needs include those that have been diagnosed by a physician as requiring treatment or that are so obvious that a lay person would recognize the necessity for doctor's attention, and those conditions which, if untreated,

18

would result in lifelong handicap or permanent loss.  <u>Monmouth County Correctional Institutional Inmates v. Lanzaro</u>, 834 F.2d 326, 347 (3d Cir. 1987), <u>cert. denied</u>, 486 U.S. 1006 (1988).

The second element of the <u>Estelle</u> test requires an inmate to show that prison officials acted with deliberate indifference to his serious medical need.  "Deliberate indifference" is more than mere malpractice or negligence; it is a state of mind equivalent to reckless disregard of a known risk of harm.  <u>Farmer v. Brennan</u>, 511 U.S. 825, 837-38 (1994).  Furthermore, a prisoner's subjective dissatisfaction with his medical care does not in itself indicate deliberate indifference.  <u>Andrews v. Camden County</u>, 95 F.Supp.2d 217, 228 (D.N.J. 2000); <u>Peterson v. Davis</u>, 551 F.Supp. 137, 145 (D. Md. 1982), <u>aff'd</u>, 729 F.2d 1453 (4th Cir. 1984).  Similarly, "mere disagreements over medical judgment do not state Eighth Amendment claims."  <u>White v. Napoleon</u>, 897 F.2d 103, 110 (3d Cir. 1990).  "Courts will disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment ... [which] remains a question of sound professional judgment.  Implicit in this deference to prison medical authorities is the assumption that such informed judgment has, in fact, been made."  <u>Inmates of Allegheny County Jail v. Pierce</u>, 612 F.2d 754, 762 (3d Cir. 1979) (internal quotation and citation omitted).  Even if a doctor's judgment concerning the proper course of a prisoner's treatment ultimately is shown to be

19

mistaken, at most what would be proved is medical malpractice and not an Eighth Amendment violation.  <u>Estelle</u>, 429 U.S. at 105-06; <u>White</u>, 897 F.2d at 110.

"Where prison authorities deny reasonable requests for medical treatment, however, and such denial exposes the inmate 'to undue suffering or the threat of tangible residual injury,' deliberate indifference is manifest.  Similarly, where 'knowledge of the need for medical care [is accompanied by the] ... intentional refusal to provide that care,' the deliberate indifference standard has been met.  ...  Finally, deliberate indifference is demonstrated '[w]hen ... prison authorities prevent an inmate from receiving recommended treatment for serious medical needs or deny access to a physician capable of evaluating the need for such treatment."  <u>Monmouth County Corr. Inst. Inmates v. Lanzaro</u>, 834 F.2d at 346 (citations omitted).  "Short of absolute denial, 'if necessary medical treatment [i]s ... delayed for non-medical reasons, a case of deliberate indifference has been made out."  <u>Id.</u> (citations omitted).  "Deliberate indifference is also evident where prison officials erect arbitrary and burdensome procedures that 'result[] in interminable delays and outright denials of medical care to suffering inmates.'"  <u>Id.</u> at 347 (citation omitted).

Here, the claim that Sgt. Perkins took Plaintiff's prescription eyeglasses and dentures is sufficient to state a claim.

B.   First Amendment "Free Exercise" Claim

Plaintiff alleges in a conclusory fashion that He was denied access to religious services.

The First Amendment to the U.S. Constitution, made applicable to the states by the Fourteenth Amendment, Cantwell v. Connecticut, 310 U.S. 296, 303 (1940), provides, inter alia, that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof... ." U.S. Const. amend. I.  "Convicted prisoners do not forfeit all constitutional protections by reason of their conviction and confinement in prison," Bell v. Wolfish, 441 U.S. 520, 545 (1979), including the protections of the First Amendment and its directive that no law shall prohibit the free exercise of religion, O'Lone v. Estate of Shabazz, 482 U.S. 342, 348 (1987). "All prisoners must be afforded reasonable opportunities to 'exercise the religious freedom guaranteed by the First and Fourteenth Amendment.'"  Small v. Lehman, 98 F.3d 762, 765 (3d Cir. 1996) (quoting Cruz v. Beto, 405 U.S. 319, 322 n.2 (1972)).

"The mere assertion of a religious belief does not automatically trigger First Amendment protections, however.  To the contrary, only those beliefs which are both sincerely held

21

and religious in nature are entitled to constitutional protection." DeHart v. Horn, 227 F.3d 47, 51 (3d Cir. 2000). See also Sutton v. Rasheed, 323 F.3d 236, 250-51 (3d Cir. 2003).

Once such a sincerely held religious belief is demonstrated, an inmate may establish that a prison regulation or practice violates the right to free exercise of religion by showing that it violates the "reasonableness test" set forth in Turner v. Safley, 482 U.S. 78, 89 (1987), and O'Lone, 482 U.S. at 349.[6] The standards delineated in Turner and O'Lone indicate that when a prison regulation or practice encroaches upon prisoners' rights to free exercise of their religion, the regulation is valid if it is reasonably related to a legitimate penological interest. Turner, 482 U.S. at 89; O'Lone, 482 U.S. at 349. The reasonableness standard involves the examination of the following four factors:  (1) whether the regulation or practice in question furthers a legitimate governmental interest unrelated to the

_____

[6] More recently, in Employment Division, Dept. of Human Resources v. Smith, 494 U.S. 872, 878-79 (1990), the Supreme Court held that neutral laws of general applicability that incidentally impinge on religious practices do not violate the Free Exercise Clause.  No federal Court of Appeals has yet held that the Smith test supplants the Turner and O'Lone analysis in the prison context.  See Levitan v. Ashcroft, 281 F.3d 1313 (D.C. Cir. 2002) and cases cited therein.  See also Fraise v. Terhune, 283 F.3d 506, 515 n.5 (3d Cir. 2002) (acknowledging the issue, but declining to reach it in the absence of either party urging application of Smith).  See also Grayson v. Schuler, 666 F.3d 450 (7th Cir. 2012) (noting that it is uncertain whether Smith implicitly overrules Turner and O'Lone); Boles v. Neet, 486 F.3d 1177 (10th Cir. 2007) (same, and collecting cases).

suppression of expression; (2) whether there are alternative means of exercising First Amendment rights that remain open to prison inmates; (3) whether the right can be exercised only at the cost of less liberty and safety for guards and other prisoners; and (4) whether an alternative exists which would fully accommodate the prisoners' rights at de minimis cost to valid penological interests. Thornburgh v. Abbott, 490 U.S. 401, 415-18 (1989); Turner, 482 U.S. at 89-91.  However, prison administrators need not choose the least restrictive means possible in trying to further legitimate penological interests. Thornburgh, 490 U.S. at 411.  Moreover, "[i]f the connection between the regulation and the asserted goal is arbitrary or irrational, [however,] then the regulation fails, irrespective of whether the other factors tilt in its favor."  Shaw v. Murphy, 532 U.S. 223, 230-31 (2001).  Nevertheless, "the burden is not on the state to prove the validity of the challenged prison regulation but instead is on the inmate to disprove it." Williams v. Morton, 343 F.3d 212, 217 (citing Overton v. Bazzetta, 539 U.S. 126 (2003).

Here, Plaintiff alleges in completely conclusory fashion that he was denied the opportunity to attend religious services while he was in administrative segregation, apparently from November 10, 2010 through February 6, 2012.

23

Based upon the fact that Plaintiff was confined in administrative segregation, some limitation on attendance at religious services appears to be rationally related to prison security concerns.  Apart from these considerations, pertinent to factors (1) and (3) of the Turner reasonableness analysis, Plaintiff has failed to allege any facts that would assist this Court in applying Turner to their situation.  In light of the obvious security rationale for the limitation, Plaintiff must allege some facts suggesting that the limitation on attendance at religious services was not reasonable.  Plaintiff fails to allege any facts describing other avenues available to him to practice his religion.  In the absence of such factual allegations, the Complaint fails to state a claim for denial of free exercise rights in violation of the First Amendment.

C.   "Access to Courts" Claim

The constitutional right of access to the courts is an aspect of the First Amendment right to petition the government for redress of grievances.  Bill Johnson's Restaurants, Inc. v. NLRB, 461 U.S. 731, 741 (1983).  In addition, the constitutional guarantee of due process of law has as a corollary the requirement that prisoners be afforded access to the courts in order to challenge unlawful convictions and to seek redress for violations of their constitutional rights.  Procunier v. Martinez, 416 U.S. 396, 419 (1974), overruled on other grounds,

24

Thornburgh v. Abbott, 490 U.S. 401, 413-14 (1989).  See also
Peterkin v. Jeffes, 855 F.2d 1021, 1036 n.18 (3d Cir. 1988)
(chronicling various constitutional sources of the right of
access to the courts).

In Bounds v. Smith, 430 U.S. 817, 828 (1977), the Supreme
Court held that "the fundamental constitutional right of access
to the courts requires prison authorities to assist inmates in
the preparation and filing of meaningful legal papers by
providing prisoners with adequate law libraries or adequate
assistance from persons trained in the law."  The right of access
to the courts is not, however, unlimited.  "The tools [that
Bounds] requires to be provided are those that the inmates need
in order to attack their sentences, directly or collaterally, and
in order to challenge the conditions of their confinement.
Impairment of any other litigating capacity is simply one of the
incidental (and perfectly constitutional) consequences of
conviction and incarceration."  Lewis v. Casey, 518 U.S. 343, 355
(1996) (emphasis in original).

Moreover, a prisoner alleging a violation of his right of
access must show that prison officials caused him past or
imminent "actual injury."  See Lewis, 518 U.S. at 348-55 and n.3
(1996); Oliver v. Fauver, 118 F.3d 175, 177-78 (3d Cir. 1997).

There is no "abstract, freestanding right to a law library
or legal assistance, [and] an inmate cannot establish relevant

25

actual injury simply by establishing that his prison's law
library or legal assistance program is subpar in some theoretical
sense. ... [T]he inmate therefore must go one step further and
demonstrate that the alleged shortcomings in the library or legal
assistance program hindered his efforts to pursue a [non-
frivolous] legal claim. He might show, for example, that a
complaint he prepared was dismissed for failure to satisfy some
technical requirement which, because of deficiencies in the
prison's legal assistance facilities, he could not have known.
Or that he had suffered arguably actionable harm that he wished
to bring before the courts, but was so stymied by inadequacies of
the law library that he was unable to file even a complaint."
Lewis, 518 U.S. at 351.

     In describing the scope of services which must be provided
by the state to indigent prisoners, the Supreme Court has stated,
"[i]t is indisputable that indigent inmates must be provided at
state expense with paper and pen to draft legal documents, with
notarial services to authenticate them, and with stamps to mail
them. ... This is not to say that economic factors may not be
considered, for example, in choosing the methods used to provide
meaningful access. But the cost of protecting a constitutional
right cannot justify its total denial." Bounds, 430 U.S. at 824-
25, clarified on other grounds, Lewis v. Casey, 518 U.S. 343.
Thus, "there is no First Amendment right to subsidized mail or

26

photocopying.  [Instead], the inmates must point to evidence of
actual or imminent interference with access to the courts."
Reynolds v. Wagner, 128 F.3d 166, 183 (3d Cir. 1997).

In addition, one alternative for providing prisoners
meaningful access to the courts is the provision of counsel.  See
e.g., Bounds, 430 U.S. at 828 (approving the provision of
"adequate assistance from persons trained in the law"); Rauso v.
Zimmerman, 2006 WL 3717785, *4 (M.D. Pa. 2006) (collecting
cases); Pressley v. Johnson, 2006 WL 2806572, *5 (W.D. Pa. 2006)
(collecting cases).

Here, Plaintiff has filed this action and at least two other
habeas actions.  See Paladino v. Warren, Civil No. 12-2576
(D.N.J.); Paladino v. New Jersey, Civil No. 12-1211 (D.N.J.).
The State is not required to provide paralegal assistance and
Plaintiff has failed to allege any facts demonstrating actual
injury.  This claim will be dismissed without prejudice.

D.   Equal Protection Claim

Plaintiff alleges that the refusal to provide him the meals
and cleaning supplies that were provided to other inmates, as
required by prison policies, violated his equal protection rights
under the "class of one" theory of Village of Willowbrook v.
Olech, 528 U.S. 562, 564 (2000).

The Fourteenth Amendment's Equal Protection Clause provides that no State shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV, § 1.

It is well settled that the Equal Protection Clause "protect[s] persons, not groups," Adarand Constructors, Inc. v. Pena, 515 U.S. 200 (1995) (emphasis omitted), and that the Clause's protections apply to administrative as well as legislative acts, see, e.g., Raymond v. Chicago Union Traction Co., 207 U.S. 20, 35-36 (1907). Thus, in Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000), the Supreme Court recognized that an equal protection claim can in some circumstances be sustained even if the plaintiff has not alleged class-based discrimination, but instead has alleged that he has been irrationally singled out as a "class of one." To proceed on such a claim, the plaintiff must allege that he has been "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." Id.[7] "[A]t the very least, to state a claim under that theory, a plaintiff must allege that (1) the defendant treated him differently from others similarly situated, (2) the defendant did so intentionally, and (3) there was no rational

--------

[7] In Olech, the Supreme Court specifically declined to reach the "subjective ill will" theory of liability relied upon by the lower court.

basis for the difference in treatment." <u>Hill v. Borough of Kutztown</u>, 455 F.3d 225 (3d Cir. 2006).

To be "similarly situated," parties must be "alike in all relevant aspects." <u>Startzell v. City of Philadelphia</u>, 533 F.3d 183, 203 (3d Cir. 2008) (internal quotation marks omitted).

> At the motion to dismiss stage, [the plaintiff] must allege facts sufficient to make plausible the existence of such similarly situated parties. <u>See Ashcroft v. Iqbal</u>, ---U.S. ----, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009); <u>see also</u> <u>Toussie v. Town Bd. of East Hampton</u>, 2010 WL 597469, *6 n. 3 (E.D.N.Y. Feb.17, 2010) (viewing <u>Iqbal</u> as "requir[ing] sufficient factual allegations to make the conclusion of similarly situated plausible" and noting that pre-<u>Iqbal</u> cases not requiring such "are problematic in view of <u>Iqbal</u> ").

<u>Perano v. Township of Tilden</u>, 423 Fed.Appx. 234 (3d Cir. 2011).

What has been significant in "class of one" cases "was the existence of a clear standard against which departures, even for a single plaintiff, could readily be assessed" as opposed to state action "which by [its] very nature involve[s] discretionary decisionmaking based on a vast array of subjective, individualized assessments." <u>Engquist v. Oregon Dep't of Agric.</u>, 553 U.S. 591, 602-03 (2008).

> In such cases the rule that people should be 'treated alike, under like circumstances and conditions' is not violated when one person is treated differently from others, because treating like individuals differently is an accepted consequence of the discretion granted. In such situations, allowing a challenge based on the arbitrary singling out of a particular person would undermine the very discretion that such state officials are entrusted to exercise.

<u>Id.</u> at 603.

29

However, the Court of Appeals for the Third Circuit has held that "'[a] pure or generic retaliation claim [] simply does not implicate the Equal Protection Clause.'"   Thomas v. Independence Twp., 463 F.3d 285, 298 n.6 (3d Cir. 2006) (citations omitted).

Here, Plaintiff has adequately alleged a "class of one" equal protection claim against Defendants Administrator Charles Warren, Assistant Superintendent K. Nellsen, Commissioner Gary M. Lanigan, and Officers White, Pinkston, Impagliazzo, Ilardi, Maura, and Dominguez.

E.   Fourth Amendment Claim

Plaintiff alleges that the search of his cell in November 2011, and the confiscation of his legal documents, eyeglasses, and dentures, violated his rights under the Fourth Amendment to be free from unreasonable searches and seizures.

"The Fourth Amendment proscription against unreasonable searches does not apply within the confines of the prison cell." Hudson v. Palmer, 468 U.S. 517, 526 (1984).   Thus, the allegation that Plaintiff's cell was improperly searched, and that certain personal property was illegally removed, fails to state a claim for violation of the Fourth Amendment.   See Crosby v. Piazza, 465 Fed.Appx. 168, *3 (3d Cir. Feb. 29, 2012).   This claim will be dismissed with prejudice.

F.   Deprivation of Property

Plaintiff asserts that he was deprived of property without due process, in violation of the Fourteenth Amendment, when his legal papers, eyeglasses, and dentures were confiscated.

An unauthorized deprivation of property by a state actor, whether intentional or negligent, does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful post-deprivation remedy for the loss is available.  Hudson v. Palmer, 468 U.S. 517, 530-36 (1984); Parratt v. Taylor, 451 U.S. 527, 543-44 (1981), overruled in part on other grounds, Daniels v. Williams, 474 U.S. 327, 328 (1986).  In Logan v. Zimmerman Brush Co., 455 U.S. 422, 435-36 (1982), the Supreme Court explained, however, that post-deprivation remedies do not satisfy the Due Process Clause if the deprivation of property is accomplished pursuant to established state procedure rather than through random, unauthorized action. But see Tillman v. Lebanon Co. Correctional Facility, 221 F.3d 410, 421 n.12 (3d. Cir. 2000) (citing United States v. James Daniel Good Real Property, 510 U.S. 43, 53 (1993)) (in "extraordinary situations" such as routine deduction of fees from a prisoner's account even without authorization, post-deprivation remedies may be adequate).

Here, if the action of the defendants was unauthorized, Plaintiff has failed to state a claim because New Jersey does

31

provide a post-deprivation remedy for unauthorized deprivation of property by public employees.  See New Jersey Tort Claims Act, N.J. Stat. Ann. §§ 59:1-1 et seq. (2001).  In addition, as Plaintiff admits, he had an administrative grievance procedure available to him.  Plaintiff has alleged no facts suggesting that the defendants deprived him of property pursuant to an established state procedure, nor has this Court located any such established procedure.  To the contrary, established state procedures require prison officials to preserve personal property of inmates.  See, e.g., N.J. Admin. Code §§ 10A:1-11.1 et. seq. (2001).

It does not appear that amendment could cure the deficiencies in Plaintiff's deprivation of property claim. Accordingly, it will be dismissed with prejudice.


V.   CONCLUSION

For the reasons set forth above, Plaintiff's claims may proceed only in part, as detailed in the accompanying Order. However, because it is conceivable that Plaintiff may be able to supplement his pleading with facts sufficient to overcome the deficiencies with respect to those claims dismissed without

32

prejudice, the Court will grant Plaintiff leave to file a second amended complaint.[8]

An appropriate order follows.

Anne E. Thompson
United States District Judge

Dated: 7/31/12

---

[8] Plaintiff should note that when an amended complaint is filed, the original complaint no longer performs any function in the case and "cannot be utilized to cure defects in the amended [complaint], unless the relevant portion is specifically incorporated in the new [complaint]." 6 Wright, Miller & Kane, Federal Practice and Procedure § 1476 (2d ed. 1990) (footnotes omitted). An amended complaint may adopt some or all of the allegations in the original complaint, but the identification of the particular allegations to be adopted must be clear and explicit. Id. To avoid confusion, the safer course is to file an amended complaint that is complete in itself. Id.