NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| Brian PALADINO, | |
|                 Plaintiff, | Civ. No. 12-2021 |
| v. | OPINION |
| K. NEWSOME, et al., | |
|                 Defendants. | |

THOMPSON, U.S.D.J.

## I.      INTRODUCTION

This matter has come before the Court on the Motion to Dismiss and for Summary Judgment filed by Defendants Warren, Crothers, Gerdes, Nellsen, Holder, and Lanigan (collectively, "Defendants").[1]  (Docket Entry No. 45).  Plaintiff Brian Paladino ("Plaintiff") opposes the motion.  (Docket Entry Nos. 47, 53).  The Court has decided the motion after considering the parties' written submissions and without oral argument, pursuant to Federal Rule of Civil Procedure 78(b).  For the following reasons, Defendants' motion is granted in part and denied in part.

## II.      BACKGROUND

The Court assumes the parties' familiarity with the underlying facts of this case and recites briefly those facts relevant to the Court's decision.

### A.  Factual Allegations

Plaintiff alleges that in October 2010, during a "break" from placement in a restraint chair for his own protection, he was fed a sandwich and given a juice cup.  (Docket Entry No. 1

---

[1] As neither party has provided full names for each defendant, the Court refers to them solely by last name.

at ¶¶ 22-29; Docket Entry No. 3 at ¶¶ 25-32). He claims that when he tried to get a drink of water from the sink, Sergeant Newsome ("Newsome") and "John Doe" officers threw him to the floor and beat him. (*Id.*). He alleges that on another occasion, Newsome and other "John Doe" officers choked him, kicked him in the testicles, and put his head underwater to deprive him of air. (*Id.*). He alleges that on this second occasion, he heard the officers state that they were acting at the command of Sergeant Perkins ("Perkins"), Sergeant Antoinello ("Antoinello"), Lieutenant Crothers ("Crothers"), and Lieutenant Gerdes ("Gerdes"). (*Id.*). Plaintiff alleges that he suffered excruciating pain and injuries requiring twenty staples in his head. (*Id.*).

Plaintiff also alleges that he has been confined in administrative segregation since November 2010. (Docket Entry No. 1 at ¶¶ 30-35). He alleges that during this time, he has had outdoor exercise on only one occasion, (Docket Entry No. 3 at ¶ 55), despite the fact that prisoners in administrative segregation are entitled to outdoor recreation in a small caged yard. (Docket Entry No. 1 at ¶¶ 30-31). He claims this lack of exercise has caused him to suffer migraine headaches, muscle cramps, and "lazy bones." (*Id.* at ¶ 36, Docket Entry No. 3 at ¶ 54).

Plaintiff alleges that his conditions of confinement also include 24-hour lockdown, a 10-minute shower three times a week, no contact visitation, no opportunity to earn good time credits, an inability to attend religious services, an inability to participate in educational programs, and the deprivation of other privileges ordinarily afforded the general prison population. (Docket Entry No. 1 at ¶ 30). Plaintiff also alleges that from May 20, 2011 to February 6, 2012, Officers White ("White"), Pinkston ("Pinkston"), and Impagliazzo ("Impagliazzo") regularly deprived Plaintiff of his meals. (*Id.* at ¶ 32). He also claims that White and Pinkston refused to dispense hygiene supplies to him, including toilet paper and soap. (*Id.*). Plaintiff alleges that on February 6, 2012, he was transferred to another unit and that, since that date, Officers Ilardi ("Ilardi"), Maura ("Maura"), and Dominguez ("Dominguez") have

refused to provide him cleaning supplies, which Plaintiff claims he needs because his cell is dirty and moldy. (*Id*. at ¶ 33). He claims that when he has complained about the conditions of his confinement, the officers to whom he complained have told him that they are acting on the instructions of Administrator Warren ("Warren"), Assistant Superintendent Nellson ("Nellson"), and Commissioner Lanigan ("Lanigan"). (*Id*. at ¶¶ 34, 35).

Plaintiff also alleges that from the time his appeals of his conviction became final in May of 2011, he has been deprived of paralegal assistance and monthly legal supplies. (*Id*. at ¶¶ 37-43). He alleges that in November 2011, Sergeant Perkins ("Perkins") instructed White and Pinkston to conduct a cell search and confiscate Plaintiff's legal documents regarding his conviction and criminal appeals. (*Id*. at ¶ 41). Plaintiff also claims that Pinkston confiscated Plaintiff's personal property on November 29, 2011. (Docket Entry No. 3 at ¶ 57).

Plaintiff also alleges that on January 3, 2012, Perkins confiscated Plaintiff's prescription eyeglasses and his dentures. (Docket Entry No. 1 at ¶ 42). He claims that he is suffering blurry vision and headaches without his glasses. (*Id*.). He also alleges that he is experiencing pain and difficulty eating without his dentures. (*Id*.).

Plaintiff alleges that on January 3, 2012, Sergeant Anderson ("Anderson") and Officer Holder ("Holder") kicked and punched him in the head, causing a gash above the eye. (Docket Entry No. 3 at ¶ 59). He also alleges that on February 5, 2012, "John Doe" officers maced him with pepper spray and twisted his toe until it fractured. (*Id*.).

### B. *Procedural History*

On April 4, 2012, Plaintiff filed a complaint, (Docket Entry No. 1), and then filed an amended complaint (collectively, "Complaint") on June 28, 2012, (Docket Entry No. 3). In the Complaint, Plaintiff seeks relief for a number of constitutional violations. First, Plaintiff claims that Defendants violated the Eighth Amendment by (1) using excessive force on two occasions

when Newsome and "John Doe" officers allegedly beat Plaintiff; (2) subjecting him to substandard conditions of confinement by limiting him to three showers per week and depriving him of meals, recreation, contact visitation, educational programs, hygiene supplies, cleaning supplies, and the opportunity to earn good time credits; and (3) providing inadequate medical care, particularly by taking from him and then denying him prescription eyeglasses and dentures. (*Id*.). He also claims that Defendants violated the First Amendment by denying him access to religious services. (*Id*.). He claims they also denied him access to the courts by failing to provide him with adequate paralegal assistance in violation of his First Amendment and Due Process rights. (*Id*.). He also claims that Defendants violated the Equal Protection Clause of the Fourteenth Amendment by depriving him of meals, cleaning supplies, writing supplies, and hygiene supplies that were provided to other similarly situated inmates. (*Id*.).

On August 13, 2012, this Court dismissed several of Plaintiff's claims *sua sponte* under 28 U.S.C. §§ 1915(e)(2), 1915A. (Docket Entry Nos. 4, 5). A number of Plaintiff's claims survived, however, including his claims for (1) excessive force in violation of the Eighth Amendment; (2) conditions of confinement in violation of the Eighth Amendment; (3) inadequate medical treatment in violation of the Eighth Amendment; and (4) disparate treatment in violation of the Equal Protection Clause of the Fourteenth Amendment. (*See* Docket Entry No. 4).

On January 4, 2013, Defendants filed a motion to dismiss and for summary judgment as to those remaining claims. (Docket Entry No. 45). Plaintiff responded on January 18, 2013, opposing the motion on grounds that (1) Defendants were precluded from making a motion to dismiss because the Court had already dismissed certain claims *sua sponte*; and (2) summary judgment was premature because Plaintiff had not had the opportunity to conduct discovery. (Docket Entry No. 47). As the Court found those arguments inadequate to address the issues

raised by Defendants in their motion, the Court provided Plaintiff with an additional opportunity to respond to Defendants' motion. (*See* Docket Entry No. 50). Specifically, the Court instructed Plaintiff to submit any evidence, including documents, affidavits or declarations, that address whether Plaintiff exhausted administrative remedies prior to initiating this lawsuit. (*Id.*). Plaintiff submitted such materials on February 26, 2013. (Docket Entry No. 53). The Court now considers the merits of Defendants' motion.

### III.     LEGAL STANDARD

Defendants seek relief under Federal Rules of Civil Procedure 12(b)(6) and 56. (*See* Docket Entry No. 45).

#### A. *Rule 12(b)(6) Standard*

Federal Rule of Civil Procedure 8(a)(2) requires that pleadings contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Rule 8 "does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations omitted). On a motion to dismiss for failure to state a claim, a "defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005).

When considering a Rule 12(b)(6) motion, a district court should conduct a three-part analysis. *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). "First, the court must 'take note of the elements a plaintiff must plead to state a claim.'" *Id.* (quoting *Iqbal*, 556 U.S. at 675). Second, the court must accept as true all of a plaintiff's well-pleaded factual allegations and construe the complaint in the light most favorable to the plaintiff. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009). But, the court should disregard any conclusory allegations proffered in the complaint. *Id.* Finally, once the well-pleaded facts have been

identified and the conclusory allegations ignored, a court must next determine whether the "facts alleged in the complaint are sufficient to show that plaintiff has a 'plausible claim for relief.'" *Id.* at 211 (quoting *Iqbal*, 556 U.S. at 679). This requires more than a mere allegation of an entitlement to relief. *Id.* "A complaint has to 'show' such an entitlement with its facts." *Id.* A claim is only plausible if the facts pleaded allow a court to reasonably infer that the defendant is liable for the misconduct alleged. *Id.* at 210 (quoting *Iqbal*, 556 U.S. at 678). Facts suggesting the "mere possibility of misconduct" fail to show that the plaintiff is entitled to relief. *Id.* at 211 (quoting *Iqbal*, 556 U.S. at 679).

B. *Rule 56 Standard*

Summary judgment is appropriate if the record shows "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In deciding a motion for summary judgment, a district court considers the facts drawn from "the pleadings, the discovery and disclosure materials, and any affidavits" and must "view the inferences to be drawn from the underlying facts in the light most favorable to the party opposing the motion." FED. R. CIV. P. 56(c); *Curley v. Klem*, 298 F.3d 271, 276-77 (3d Cir. 2002) (internal quotations omitted).

In resolving a motion for summary judgment, the Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby*, 477 U.S. 242, 251-52 (1986). More precisely, summary judgment should be granted if the evidence available would not support a jury verdict in favor of the nonmoving party. *Id.* at 248-49. The Court must grant summary judgment against any party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. Properly applied, Rule 56 will

"isolate and dispose of factually unsupported claims or defenses" before those issues come to trial. *Id.* at 323-24.

## IV.   ANALYSIS

Defendants seek relief under Federal Rules of Civil Procedure 12(b)(6) and 56. (Docket Entry No. 45). They argue that (1) Plaintiff did not exhaust administrative remedies; (2) Defendants Warren, Nellsen, and Lanigan are entitled to qualified immunity; (3) the claims against Defendants Warren, Nellsen, and Lanigan are based on an impermissible theory of *respondeat superior* liability; and (4) Plaintiff cannot make the requisite showing to warrant punitive damages.

Before considering the merits of Defendants' arguments, it is necessary to address several preliminary matters concerning the proper standard of review. First, Plaintiff contends that Defendants are precluded from bringing a Rule 12(b)(6) motion to dismiss because the Court already reviewed Plaintiff's complaint and dismissed a number of his claims *sua sponte* under 28 U.S.C. §§ 1915(e)(2), 1915A. (Docket Entry No. 47). The right of a defendant to bring a motion to dismiss for failure to state a claim, however, is not foreclosed by a district court's prior finding, during *sua sponte* screening of a civil action filed by an *in forma pauperis* prisoner, that the prisoner stated a claim. *Teahan v. Wilhelm*, 481 F. Supp. 2d 1115, 1119 (S.D. Cal. Mar. 28, 2007) (citing cases). As such, the Court rejects Plaintiff's argument that the Court's prior *sua sponte* dismissal of certain claims precludes the Court from now considering Defendants' arguments under Rule 12(b)(6).

Additionally, the Court notes that, upon reviewing Defendants' brief, it is unclear which standard of review – Rule 12(b)(6) or Rule 56 – Defendants would have the Court apply to each of their arguments. The Court, therefore, looks to Defendants' brief to determine which arguments they advance under each standard. First, the Court concludes that Defendants'

argument concerning exhaustion of administrative remedies is properly considered under the summary judgment standard. "Under FED. R. CIV. P. 12(d), if, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." *Cerome v. Moshannon Valley Corr. Cntr./Cornell Cos., Inc.*, No. 09-2070, 2010 WL 4948940, at *3 (3d Cir. 2010). As Defendants rely on documents outside of the pleadings in arguing that Plaintiff failed to exhaust administrative remedies, the Court interprets Defendants' motion to be a motion for summary judgment as to that issue.

The Court interprets Defendants' other arguments, however, as arguments made under a Rule 12(b)(6) motion to dismiss standard. In reaching this decision, the Court notes that Plaintiff has had no opportunity for discovery, and it may be necessary for the parties to conduct some discovery before addressing these arguments on summary judgment.[2] Furthermore, Defendants advance no authority in support of treating their remaining arguments under a summary judgment standard, and the Court notes that the sections of Defendants' brief concerning qualified immunity, *respondeat superior*, and punitive damages contain no citations to the record. As Defendants, therefore, appear to advance these arguments based on the pleadings alone, the Court treats these arguments as arguments raised under Rule 12(b)(6).

A. *Motion for Summary Judgment*

The Prison Litigation Reform Act ("PLRA") requires prisoners asserting a claim under 42 U.S.C. § 1983 to first exhaust administrative remedies. 42 U.S.C. § 1997e. Specifically,

---

[2] Qualified immunity questions should be decided at the earliest possible stage in the litigation; however, the issue may be addressed in either a motion for dismiss or a motion for summary judgment. *See Mitchell v. Twp. of Willingboro Mun. Gov't*, No. 11-1664, 2012 WL 5989358, at *4, 12-13 (D.N.J. Nov. 28, 2012); *see also Crawford-El v. Britton*, 523 U.S. 574, 593 n.14 (1998) ("[L]imited discovery may sometimes be necessary before the district court can resolve a motion for summary judgment based on qualified immunity."); *Anderson v. Creighton*, 483 U.S. 635, 637 (1987) (upholding a district court's decision on the issue of qualified immunity before any discovery took place).

Section 1997e provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." *Id*.

"The purpose of the exhaustion requirement is (1) to return control of the inmate grievance process to prison administrators; (2) to encourage development of an administrative record, and perhaps settlements, within the inmate grievance process; and (3) to reduce the burden on the federal courts by erecting barriers to frivolous prisoner lawsuits." *Atum-Ra v. Ortiz*, No. 04-2711, 2006 WL 1675091, at *2 (D.N.J. June 14, 2006) (citing *Spruill v. Gillis*, 372 F.3d 218, 230 (3d Cir. 2004)). It applies to all prisoners in custody at the time they filed their original complaint, *Porter v. Nussle*, 534 U.S. 516, 524 (2002), and it is mandatory for all Section 1983 claims, *Jones v. Bock*, 127 S. Ct. 910, 918-19 (2007) (citing *Porter*, 534 U.S. at 524).

The Third Circuit has held that the exhaustion requirement applies to institutional grievance procedures, even those not formally adopted by a state administrative agency. *Concepcion v. Morton*, 306 F.3d 1347, 1347-49 (3d Cir. 2002). Therefore, to properly exhaust administrative remedies, a prisoner must comply with any grievance procedures described in inmate handbooks. *Id*. at 1347-48. The New Jersey State Prison Inmate Handbook "sets forth a procedure for pursuing administrative remedies within the prison system which entails the filing of [an Inmate Remedy System Form ("IRSF")] and if necessary, subsequent appeal of an unfavorable decision." *Di Giovanni v. New Jersey*, No. 04-2060, 2006 WL 2524174, at *1 (D.N.J. Aug. 29, 2006).

The PLRA contains no futility exception that would excuse a failure to exhaust, *Booth v. Churner*, 532 U.S. 731, 741 n.6 (2001); however, a prisoner need only exhaust those administrative remedies "available" to him. 42 U.S.C. § 1997(e); *Malouf v. Turner*, 814 F. Supp.

2d 454, 464 (D.N.J. Aug. 31, 2011) (citing *Verbanik v. Harlow*, 441 F. App'x 931, 933-34 (3d Cir. 2011)).  "To constitute an available administrative remedy, a grievance procedure must enable the appropriate prison authorities to provide relief or to take action in response to a prisoner's grievance." *In re Bayside Prison Litig.*, No. 97-5127, 2008 WL 2387324, at *4 (D.N.J. May 19, 2008) (citing *Booth*, 532 U.S. at 736 n.4).  An administrative remedy is not available, however, if a prison official has misled or otherwise precluded the inmate from filing or exhausting prison grievance procedures.  *Mitchell v. Horn*, 318 F.3d 523, 529 (3d Cir. 2003); *Brown v. Cook*, 312 F.3d 109, 112 (3d Cir. 2002); *Camp v. Brennan*, 219 F.3d 279, 280-81 (3d Cir. 2000); *Oliver v. Moore*, 145 F. App'x 731, 734-35 (3d Cir. 2005).

Here, the record reveals that Plaintiff did not exhaust administrative remedies as to all claims.  First, as a preliminary matter, although Plaintiff states that "[t]he record that was submitted to the Court by defence (sic) is incomplete," Plaintiff apparently does not contend that any IRSFs are missing from the record.  (Docket Entry No. 53, Attach. 1 at ¶ 26).  Instead, Plaintiff appears to take issue with the "linguistics" and lack of "checks and balances" in the system.  (*Id.*).  As Plaintiff has not asserted that he submitted any IRSFs not included in the submissions before the Court, the Court finds that the IRSFs submitted to the Court are a complete set.

Having reviewed those IRSFs, it is clear that Plaintiff did not exhaust administrative remedies for all claims.  First, Plaintiff did not submit an IRSF concerning the alleged incidents where (1) "John Doe" Defendants, Newsome, Perkins, Antoinello, Crothers, and Gerdes threw Plaintiff to the floor and beat him; (2) Anderson and Holder kicked and punched him in the eye on January 2, 2012; and (3) "John Doe" Defendants maced Plaintiff with pepper spray and twisted his toe until it fractured.  As such, Plaintiff failed to exhaust administrative remedies for

his Eighth Amendment excessive force claim and summary judgment for Defendants must, therefore, be entered as to that claim.

Plaintiff also failed to exhaust administrative remedies for his Eighth Amendment claim for inadequate medical treatment, in which he claims Defendants took his eyeglasses and dentures. After reviewing each of the IRSFs submitted, the Court concludes that during the relevant period, Plaintiff submitted four IRSFs regarding medical care. (*See* Docket Entry No. 45, Attach. 3, Ex. C at 83, 128, 138-39, 151). Only one actually pertains to the allegations Plaintiff makes in this lawsuit, however. (*Id*. at 83). In that IRSF, Plaintiff wrote: "On February 5, 2012, I was escorted . . . on video camera. My glasses have been missing since. They were in my pants pocket and were taken while video was being taken. Please view video, locate my eyeglasses and return them to me ASAP." (*Id*.). As this is the only IRSF Plaintiff apparently submitted that concerns the medical care allegations in the Complaint, the Court finds that Plaintiff did not exhaust administrative remedies as to that claim. Plaintiff simply did not place the prison on notice of his claim of inadequate medical care. As such, summary judgment is appropriate as to Plaintiff's Eighth Amendment claim for inadequate medical treatment.

Finally, Plaintiff submitted numerous IRSFs regarding prison conditions, (Docket Entry No. 45, Attach. 2, Ex. B at 34, 36-40, 53, 58, 63, 66, 68; Attach. 3, Ex. C at 86, 113, 114, 125, 126, 129, 130, 136, 152); however, the Court finds that he failed to exhaust administrative remedies as to many of the conditions complained of in this lawsuit. To briefly recite Plaintiff's claims pertaining to the conditions of his confinement, he alleges that Defendants violated the Eighth Amendment by (1) regularly depriving Plaintiff of meals; (2) subjecting him to a 24-hour lockdown and providing him with exercise on only one occasion over a period of at least eighteen months; (3) denying Plaintiff contact visitation rights; (4) denying him access to educational programs; (5) depriving him of hygiene supplies; (6) depriving him of cleaning

supplies; and (7) permitting him to take only three showers per week.[3]  Plaintiff also complains that Defendants violated the Fourteenth Amendment Equal Protection Clause by (1) regularly depriving him of meals; (2) depriving him of hygiene supplies; (3) depriving him of cleaning supplies; and (4) depriving him of writing supplies.  The Court finds, however, that Plaintiff submitted no IRSFs complaining of his visitation rights, that he was permitted to take only three showers per week, that he was denied access to educational programs, or that he was deprived of cleaning supplies.

Additionally, the Court finds that Plaintiff did not submit IRSFs to support his claim of regular meal deprivation.  In his Complaint, Plaintiff claims he was "starved" of meals daily from May 20, 2011 until February 6, 2012 and was "sometimes" deprived of his dinner "once or twice a week."  (Docket Entry No. 1 at ¶ 32).  Yet Plaintiff filed only two IRSFs complaining that he did not receive adequate food.  In the first IRSF, Plaintiff complains that his requests for additional slices of bread (he was already receiving two) had been denied.  (Docket Entry No. 45, Attach. 3 at 35).  In the second dated January 12, 2012, Plaintiff complains that Pinkston refused to give him breakfast or water on December 3, 2011, and also refused to give him lunch on December 17, 2011.  (*Id*. at 58).  The Court simply cannot say that these IRSFs were sufficient to place the prison on notice of the regular and ongoing meal deprivation alleged in the Complaint.  As such, to the extent Plaintiff's claims rely on allegations of meal deprivation, access to showers, no contact visitation and access to educational programs, or deprivation of cleaning supplies, Defendants are entitled to summary judgment.

---

[3] Plaintiff also complains that he is ineligible to earn good time credits; however, this is effectively a challenge to the length of his confinement.  Such a challenge must be brought in a petition for a writ of habeas corpus.  *Preiser v. Rodriguez*, 411 U.S. 475, 499 (1973) ("[A] § 1983 action is a proper remedy for a state prisoner who is making a constitutional challenge to the conditions of his prison life, but not to the fact or length of his custody.").  As such, to the extent Plaintiff claims relief based on his inability to earn good time credits, this claim is dismissed.

Plaintiff did, however, submit IRSFs complaining that he was not given adequate soap and toilet paper, (*id*. at 37, 39, 40), and that he was denied adequate recreation or exercise, (*id*. at 126, 129). The Court also finds that Plaintiff submitted IRSFs concerning his alleged deprivation of writing materials. (*Id*. at 54, 56, 57, 59, 80, 106, 108, 114, 125, 141, 149). Therefore, the Court finds that Plaintiff submitted IRSFs to support his Eighth Amendment claim to the extent it relies on his claims that he did not receive adequate hygiene supplies or exercise.[4] Additionally, the Court finds that Plaintiff submitted IRSFs to support his Fourteenth Amendment claim to the extent it relies on his allegations that he was denied hygiene supplies and writing supplies provided to similarly situated prisoners.[5]

Although Plaintiff did in fact submit IRSFs for those two claims, Defendants contend that Plaintiff nevertheless did not exhaust administrative remedies because he did not appeal the prison's resolution of those complaints. Plaintiff, however, contends that he did not receive responses to many of the IRSFs he submitted[6] and that when he did receive a response, he immediately appealed but never received a response to those appeals.[7] As a prisoner is only

_____

[4] Plaintiff apparently does not claim that the alleged deprivation of writing and legal materials is an Eighth Amendment violation. (*See* Docket Entry No. 1 at 15).

[5] Plaintiff apparently does not contend that his lack of exercise or recreation violates the Fourteenth Amendment. (*See* Docket Entry No. 1 at 15).

[6] Plaintiff states a number of times that he often did not receive responses to the IRSFs he filed. (*See e.g.,* Docket Entry No. 53 at 2-3 ("I write greavance (sic) (IRSF) all the time about the isolation and deprivation of sensory stimuli and no responses or even an acknowledgment of the problem."); Docket Entry No. 53, Attach. 1 at ¶¶ 6 ("[IRSFs] don't get acknowledged, entered into the tracking system . . . and don't get any response."), 9 (denying receiving a response to an August 17, 2011 IRSF concerning soap rations), 20 (denying receiving a response to a February 15, 2012 IRSF concerning disciplinary charges); Docket Entry No. 53, Attach. 5 at ¶ 3(a) ("When I file grievance forms requesting that I need items such as toothbrushes, shower shoes, towel, washcloth, toothpaste and soap, I either don't get a response or the reply insults my intelligence by saying that I have to purchase these items from inmate commissary.")). Several of Plaintiff's IRSFs also attest to his difficulties in obtaining responses to IRSFs and his mail in general. (Docket Entry No. 45, Attach. 3 at 70 (referencing "mail being withheld"); Docket Entry No. 45, Attach. 4, at 84 (stating "You can't tell me that nobody has written to me since September of 2011" and stating that someone is "withholding" his mail), 91 (seeking to appeal "non-responsive replies to all the IRSF-101 remedy forms I have been filing for legal assistance . . . ."); Docket Entry No. 53, Attach. 4 at 4 ("I've written several times since February 6, 2012 and not received a response.")).

[7] Plaintiff states that when he did receive a response to his IRSFs, he immediately appealed but received no response to those appeals. (*See, e.g.,* Docket Entry No. 53, Attach. 1 at ¶¶ 8 (explaining that after receiving a response to an April 20, 2012 IRSF "I the appealed asking why it took 3 months for a response and if I could have a phone call debitted (sic) to my account . . . . This appeal like many others did not get a response."), 10 (explaining that after

13

required to exhaust those administrative remedies available to him, the Court concludes that Defendants have not met their burden of establishing that no genuine issue of material fact exists as to whether Plaintiff exhausted administrative remedies for his Eighth Amendment claim challenging the conditions of his confinement and his Fourteenth Amendment claim alleging disparate treatment. *See Jackson v. Gandy*, 877 F. Supp. 2d 159, 179 (D.N.J. June 29, 2012) (denying summary judgment because genuine issue of material fact existed as to whether prisoner had exhausted administrative remedies). As such, summary judgment is denied as to those claims.

### B. Motion to Dismiss

Defendants move to dismiss Plaintiff's remaining claims under Rule 12(b)(6), arguing that (1) Defendants Warren, Nellsen, and Lanigan are entitled to qualified immunity; (2) Plaintiff's claims against Warren, Nellsen, and Lanigan impermissibly rely on a theory of *respondeat superior*; and (3) Plaintiff cannot meet the requisite standard to recover punitive damages.

#### 1. Qualified Immunity

"The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 129 S. Ct. 808, 815 (2009) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "Qualified immunity balances two important interests – the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Id.* Government officials are protected by

_____

receiving a responses to IRSFs filed on August 29, 2011 "I immediately appealed [and] never received any response to the appeal."), 15 (explaining that Plaintiff appealed an IRSF regarding food tampering but "never received a response"), 16 (explaining that Plaintiff "appealed immediately" the response to a November 30, 2012 IRSF regarding a ripped sheet but has received "no response to date"); Docket Entry No. 53, Attach. 4 at 4).

qualified immunity "regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Id*. (quotations and citations omitted). "Because qualified immunity is an immunity from suit rather than a mere defense to liability," immunity questions should be resolved "at the earliest possible stage in litigation." *Id*. (quotations and citations omitted).

When determining whether an official is entitled to qualified immunity, courts conduct a two-step analysis. *Saucier v. Katz*, 533 U.S. 194, 200-01 (2001). "First, the court must consider whether the facts alleged, taken in the light most favorable to the plaintiff, show that the officer's conduct violated a constitutional right." *Kopec v. Tate*, 361 F.3d 772, 776 (3d Cir. 2004) (citing *Saucier*, 533 U.S. at 201). "If the plaintiff fails to make out a constitutional violation, the qualified immunity inquiry is at an end; the officer is entitled to immunity." *Bennett v. Murphy*, 274 F.3d 133, 136 (3d Cir. 2002). "If, however, a violation could be made out on a favorable view of the parties' submissions, the next sequential step is to ask whether the right was clearly established." *Kopec*, 361 F.3d at 776 (quoting *Saucier*, 533 U.S. at 201) (quotations omitted). "If it would not have been clear to a reasonable officer what the law required under the facts alleged, then he is entitled to qualified immunity." *Id*.

Before analyzing whether Defendants are entitled to qualified immunity in this case, the Court notes that "[t]he Third Circuit has cautioned against dismissing a case based on qualified immunity on a Rule 12(b)(6) motion because 'it is generally unwise to venture into a qualified immunity analysis at the pleading stage as it is necessary to develop the factual record in the vast majority of cases.'" *Mitchell v. Twp. of Willingboro Mun. Gov't*, No. 11-1664, 2012 WL 5989358, at *4 (D.N.J. Nov. 28, 2012) (citing *Newland v. Reehorst*, 328 F. App'x 788, 791 n.3 (3d Cir. 2009)). Bearing this in mind, the Court now turns to Defendants' arguments to determine whether qualified immunity is established on the face of the Complaint.

Defendants make a number of general arguments concerning qualified immunity that are not specific to either of Plaintiff's two remaining claims. First, Defendants argue that Warren, Nellsen, and Lanigan are entitled to qualified immunity because they did not violate any constitutional right as they had no personal involvement in the conduct complained of. (Docket Entry No. 45 at 15). In light of the liberal pleading construction given to *pro se* pleadings, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), however, the Court does not agree. Plaintiff has alleged that the conduct he complains of, though carried out by various correctional officers, was ordered by Warren, Nellsen, and Lanigan. As the Court sees little distinction between Defendants ordering a subordinate to perform certain actions and Defendants performing those actions themselves, the Court disagrees that Defendants Warren, Nellsen, are entitled to qualified immunity on this basis. *See Novellino v. New Jersey Dep't of Corrs. Mountainview Youth Corr. Facility*, No. 10-4542, 2011 WL 3418201, at *4-5 (D.N.J. Aug. 3, 2011) (denying qualified immunity where the defendants ordered others to engage in conduct in violation of the constitution).

Additionally, Defendants argue that dismissal is appropriate because Plaintiff fails to state a "specific time or date, or any inclination" that Defendants Warren, Nellsen, and Lanigan ordered such conduct. (Docket Entry No. 45, Attach. 1 at 17). The Court, however, disagrees that the omission of such facts constitutes a failure to state a claim under Rule 12(b)(6). Additionally, the Court notes that Defendants bear the burden of showing that dismissal is appropriate but have cited no authority to support their contention that Plaintiff must cite a date or time that Warren, Nellsen, and Lanigan made such orders. Furthermore, the Court notes that *pro se* complaints are construed liberally and held to "less stringent standards than formal pleadings drafted by lawyers." *Estelle v. Gamble*, 491 U.S. 97, 106 (1976). The Court, therefore, finds this argument unavailing.

Having addressed Defendants' more general arguments, the Court now turns to whether Defendants Warren, Nellsen, and Lanigan are entitled to qualified immunity on Plaintiff's Eighth Amendment claim and then whether they are entitled to such immunity on Plaintiff's Fourteenth Amendment claim.

### a. Eighth Amendment Claim

"[T]he treatment a prisoner receives in a prison and the conditions under which he is confined are subject to [s]crutiny under the Eighth Amendment."[8] *Helling v. McKinney*, 509 U.S. 25, 31 (1993). The Constitution mandates that prisoners be afforded "humane conditions of confinement;" however, "[t]he Constitution does not mandate comfortable prisons." *Farmer v. Brennan*, 511 U.S. 825, 832-33 (1994) (internal citations omitted). "[P]rison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care and must 'take reasonable measures to guarantee the safety of inmates.'" *Id.* at 832 (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)).

To establish an Eighth Amendment violation, "an inmate must allege both an objective element-that the deprivation was sufficiently serious-and a subjective element-that a prison official acted with a sufficiently culpable state of mind, i.e., deliberate indifference." *Nami v. Fauver*, 82 F.3d 63, 67 (3d Cir. 1996) (citing *Wilson v. Seiter*, 501 U.S. 294 (1991)). A deprivation is "sufficiently serious" when it results in the denial of "the minimal civilized measure of life's necessities." *Fortune v. Hamberger*, 379 F. App'x 116, 122 (3d Cir. 2010) (citing *Farmer*, 511 U.S. at 834). "This requires an inmate to show that he is incarcerated under conditions posing a substantial risk of harm . . . ." *Id.* (internal quotations omitted). Furthermore, "[a] prison official demonstrates deliberate indifference if he knows of and

---

[8] The Eighth Amendment applies to the states through the Fourteenth Amendment. *See, e.g.*, *Wilson v. Seiter*, 501 U.S. 294, 296-97 (1991).

disregards an excessive risk to the inmate's health or safety." *Ham v. Greer*, 269 F. App'x 149, 151 (3d Cir. 2008) (citing *Farmer*, 511 U.S. at 834).

Plaintiff contends that the conditions of his confinement violate the Eighth Amendment. Having concluded that Plaintiff failed to exhaust administrative remedies as to many of the conditions of confinement complained of, Plaintiff's Eighth Amendment claim now consists of allegations of (1) 24-hour lockdown with only one instance of recreation since November 2010; and (2) the denial of a portion of hygiene supplies, namely toilet paper and soap. Plaintiff also contends that he suffers from migraine headaches, anxiety, depression, and muscle cramps as a result of these deprivations. (Docket Entry No. 1 at ¶ 36; Docket Entry No. 3 at ¶ 54).

In light of the liberal pleading construction given to *pro se* pleadings, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), the Court cannot agree with Defendants that Plaintiff has failed to state an Eighth Amendment violation or that such a violation was not clearly established for qualified immunity purposes. Although "[e]ven minimal provision of time for exercise and recreation may satisfy constitutional requirements," *Gattis v. Phelps*, 344 F. App'x 801, 805 (3d Cir. 2009) (citing cases), here Plaintiff alleges a total deprivation of exercise for more than eighteen months. "It is generally recognized that a total or near-total deprivation of exercise or recreational opportunity, without penological justification, violates Eighth Amendment guarantees." *See Patterson v. Mintzes*, 717 F.2d 284, 289 (6th Cir. 1983); *see Anderson v. Coughlin*, 757 F.2d 33, 35 (2d Cir. 1985) ("some opportunity for exercise must be afforded to prisoners"); *Ruiz v. Estelle*, 679 F.2d 1115, 1152 (5th Cir. 1982) ("confinement of inmates for long periods of time without opportunity for regular physical exercise constitutes cruel and unusual punishment"); *Spain v. Procunier*, 600 F.2d 189, 199 (9th Cir. 1979) ("denial of fresh air and regular outdoor exercise and recreation constitutes cruel and unusual punishment"); *Campbell v. Cauthron*, 623 F.2d 503, 506-07 (8th Cir. 1980); *Campbell v. McGruder*, 580 F.2d

521, 545-46 (D.C. Cir.1978). The Third Circuit has also indicated that a prisoner's allegations are sufficient to state an Eighth Amendment violation where he claimed he was confined in administrative segregation and denied access to daily exercise and educational programs for approximately two years. *Deen-Mitchell v. Lappin*, No. 12-3795, 2013 WL 628568, at *3 (3d Cir. 2013). As such, the Court cannot say that Plaintiff's allegations are insufficient to state an Eighth Amendment violation or that such a violation was not clearly established. Therefore, the Court is not persuaded that Defendants Warren, Nellsen, and Lanigan are entitled to qualified immunity regarding Plaintiff's Eighth Amendment claim.[9]

### b. Fourteenth Amendment

Defendants also contend that Warren, Nellsen, and Lanigan are entitled to qualified immunity on Plaintiff's Fourteenth Amendment claim. "The Equal Protection Clause of the Fourteenth Amendment requires that similarly situated individuals be treated alike." *Mann v. Brenner*, 375 F. App'x 232, 238 (3d Cir. 2010) (citing *City of Cleburne v. Cleburne Living Ctr.*, 472 U.S. 432, 439 (1985)). "An equal protection claim may be brought by a 'class of one,' an individual claiming that he has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Id.* (citing *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)). "To state a claim under this theory, a plaintiff must allege that (1) the defendant treated him differently from others similarly situated, (2) the defendant did so intentionally, and (3) there was no rational basis for the difference in treatment." *Leone v. Twp. of Deptford*, 616 F. Supp. 2d 527, 535-36 (D.N.J. Apr. 29, 2009).

Construing the complaint liberally, the Court cannot say that Plaintiff has not adequately alleged a constitutional violation under the Fourteenth Amendment and that such a violation was

---

[9] Once again, the Court notes that Defendants have provided no authority for their argument that Plaintiff's allegations fail to state a constitutional violation and that such a violation is not clearly established. As Defendants bear the burden of showing that dismissal is warranted, the Court is reluctant to dismiss Plaintiff's claim in the absence of such authority.

not clearly established under existing law at the time of the alleged conduct. Plaintiff claims that he was deprived of hygiene and writing supplies that were provided to similarly situated inmates. Although Plaintiff does not provide examples of inmates who received supplies when Plaintiff did not, the Court finds that such examples are not necessary to properly state a claim under Rule 8. *M.G. v. Crisfield*, No. 06-5099, 2009 WL 2920268, at *5 (D.N.J. Sept. 11, 2009) (citing *Phillips v. Cnty. of Alleghany*, 515 F.3d 224, 243-244 (3d Cir. 2008)) ("The Third Circuit has held that a plaintiff is not required to specifically identify the similarly situated persons."); *see also DeMuria v. Hawkes*, 328 F.3d 704, 707 (2d Cir. 2003). "To survive a motion to dismiss, the complaint must merely contain sufficient allegations of the existence of similarly situated individuals to nudge the claim across the line from conceivable to plausible." *Toll Bros., Inc. v. Twp. of Moorestown*, No. 10-4843, 2011 WL 2559507, at *6 (D.N.J. June 27, 2011) (citing *Mann*, 375 F. App'x at 238-39). Furthermore, Defendants have offered no rational basis for the allegedly disparate treatment. As such, Defendants have not shown that they are entitled to qualified immunity on Plaintiff's Fourteenth Amendment claim.

### 2. *Respondeat Superior*

Defendants also argue that all claims against Warren, Nellsen, and Lanigan must be dismissed because they rely on an impermissible theory of *respondeat superior*. Local government units and supervisors are not liable under Section 1983 solely on a theory of *respondeat superior*. *See City of Oklahoma City v. Tuttle*, 471 U.S. 808, 824 n.8 (1985); *Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658, 690-91, 694 (1978) (municipal liability attaches only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts injury" complained of); *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 583-84 (3d Cir. 2003). "A defendant in a civil rights action must have personal involvement in the alleged

wrongs, liability cannot be predicated solely on the operation of *respondeat superior*." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988) (citations omitted). Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." *Id*.

As Section 1983 does not support liability on the theory of *respondeat superior*, to the extent that any of Plaintiff's claims rely on such a theory, these claims are dismissed. Plaintiff, however, alleges that the conduct complained of was ordered by Warren, Nellsen, and Lanigan. Therefore, the Court finds sufficient allegations of personal involvement in the pleadings and concludes that Defendants' argument regarding *respondeat superior* does not support dismissal of the two remaining claims against Warren, Nellsen, and Lanigan.

### 3. *Punitive Damages*

Defendants also argue that Plaintiff's claims for punitive damages should be dismissed under Rule 12(b)(6). The PLRA does not prohibit prisoners from seeking punitive damages in § 1983 claims. *Gattis*, 344 F. App'x at 804 (citing *Allah v. Al-Hafeez*, 226 F.3d 247, 251-52 (3d Cir. 2000)). Punitive damages are only awarded, however, if the defendant's conduct is particularly egregious. *Smith v. Wade*, 461 U.S. 30, 56 (1983). To recover punitive damages, a state defendant's conduct must have been "motivated by evil motive or intent" or it must have "involve[d] reckless or callous indifference to the federally protected rights of others." *Id*.

Here, Defendants have not shown that Plaintiff's claims for punitive damages should be dismissed under Rule 12(b)(6). First, Defendants offer no authority to support their contention that dismissal of a claim for punitive damages is appropriate where, as here, Defendants allegedly singled out Plaintiff for special treatment, taunted him, and deprived him of exercise altogether for more than eighteen months. Furthermore, it is generally a question of fact as to whether a defendant's conduct was motivated by an evil motive or involves reckless

indifference.  *Coleman v. Rahija*, 114 F.3d 778, 787 (3d Cir. 1997).  Therefore, without additional showing by Defendants that dismissal is warranted, the Court declines to dismiss Plaintiff's claims for punitive damages at this time.

V.       <u>CONCLUSION</u>

For the foregoing reasons, Defendants' Motion to Dismiss and for Summary Judgment is granted in part and denied in part.  An appropriate order will follow.

<u>*/s/ Anne E. Thompson*         </u><br>ANNE E. THOMPSON, U.S.D.J.

Date:   June 27, 2013